Approved: _Mitzi Steiner_____
                Assistant United States Attorney

Before:      THE HONORABLE KATHARINE H. PARKER
                United States Magistrate Judge
                Southern District of New York

# 20 MAG 12769

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                                    :          **SEALED COMPLAINT**
IN THE MATTER OF                                   :
THE EXTRADITION OF                               :          18 U.S.C. § 3184
ANDREW HAWKINS                                   :
                                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

            Mitzi Steiner, the undersigned Assistant United States Attorney, being duly sworn, states

on information and belief that the following is true and correct:

1.          In this matter, I represent the United States in fulfilling its treaty obligations to the

Government of the United Kingdom.

2.          There is an extradition treaty in force between the United States and the United Kingdom

of Great Britain and Northern Ireland (the "Treaty").[1]

3.          Pursuant to the Treaty, the Government of the United Kingdom has submitted a formal

request through diplomatic channels for the extradition of ANDREW HAWKINS.

---

[1] Extradition Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland, U.S.-U.K., Mar. 31, 2003, S. TREATY DOC NO. 108-23 (2004) (the "2003 Treaty"), and related Exchanges of Letters, *as amended by the* Instrument as contemplated by Article 3(2) of the Agreement on Extradition Between the United States of America and the European Union signed 25 June 2003, as to the application of the Extradition Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland signed 31 March 2003, U.S.-U.K., Dec. 16, 2004, S. TREATY DOC. NO. 109-14 (2006) (the "Instrument"), with Annex (the "Annex") reflecting the integrated text of the operative provisions of the 2003 Treaty and the Instrument (collectively, the "Treaty").

4.      According to the information provided by the Government of the United Kingdom, ANDREW HAWKINS is wanted to stand trial in the United Kingdom for one count of fraud by false representation, in violation of Section 2 of the Fraud Act of 2006.

5.      The offense was committed within the jurisdiction of the United Kingdom. A warrant for ANDREW HAWKINS' arrest issued on October 5, 2018 by Westminster Magistrates' Court. The warrant, which remains valid and enforceable, issued on the basis of the following facts:

   a.      Between January 28, 2010, and November 7, 2012, HAWKINS made false representations to the victim complainant, Fiona Anderson, causing her to transfer £102,400 to an account controlled by HAWKINS under the false premise that it was to be invested in various investment schemes, when, in fact, the funds were not invested as proposed and were diverted and used by HAWKINS for his own purposes. Specifically, Anderson provided £22,400 to HAWKINS to be deposited in an investment scheme by HAWKINS that according to HAWKINS would "grow in capital". Anderson provided HAWKINS with an additional £80,000 for HAWKINS to invest in a second purported opportunity, with a company called Intelligent Land Investments Ltd.

   b.      Intelligent Land Investments Ltd. has never conducted business with HAWKINS, although it has conducted business with HAWKINS' brother and father.

   c.      HAWKINS made repeated assurances to Anderson that her investments were successful. However, HAWKINS never invested Anderson's money as promised.

   d.      Bank records indicate that the money HAWKINS received from Anderson was transferred into gambling websites. At least one gambling account opened by HAWKINS shows deposits of £618,122.00, withdrawals of £136,275.00, and a total loss of £481,846.00.

   e.      Despite repeated attempts, Anderson has not been able to retrieve any of her

initial investment.

       f.      Anderson, who had met HAWKINS in person, has been shown a photograph of HAWKINS taken on or about July 11, 2012 as part of an arrest on a separate fraud matter, unconnected to this request for extradition. Anderson has confirmed that HAWKINS is the individual who defrauded her.

7.      ANDREW HAWKINS may be found within the jurisdiction of this court as he is believed to be residing at 154 West 70th Street, Unit 11F, New York, NY, 10023.

8.      Tom Heinemann, an attorney in the Office of the Legal Adviser of the United States Department of State, has provided the Department of Justice with a declaration authenticating a copy of the diplomatic note by which the request for extradition was made and a copy of the Extradition Treaty between the United States and the United Kingdom, stating that the offense for which extradition is demanded is covered by the Treaty, and confirming that the documents supporting the request for extradition are properly certified by the principal American diplomatic or consular officer in the United Kingdom, in accordance with 18 U.S.C. § 3190, so as to enable them to be received in evidence.

9.      The declaration from the Department of State with its attachments, including a copy of the diplomatic note from the United Kingdom, a copy of the Treaty, and the certified documents submitted in support of the request (marked collectively as Government's Exhibit A) are filed with this complaint and incorporated by reference herein.

10.     I am not aware of any developments within the time period since the First Appearance Warrant was laid on October 5, 2018 that would undermine the case against the Requested Person.

11.     ANDREW HAWKINS would be likely to flee if he learned of the existence of a warrant

for his arrest.

WHEREFORE, I respectfully request a warrant for the arrest of ANDREW HAWKINS be issued in accordance with 18 U.S.C. § 3184 and the Extradition Treaty between the United States and the United Kingdom, and that this Complaint and the warrant be placed under the seal of the court, except as disclosure is needed for its execution, until such time as the warrant is executed.

/s/ Mitzi S. Steiner
_____
MITZI S. STEINER
ASSISTANT UNITED STATES ATTORNEY


Sworn to me through the transmission of this
Complaint by reliable electronic means, pursuant to
Federal Rule of Criminal Procedure 4.1, this
30 of November, 2020

_____
THE HONORABLE KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

**Exhibit A**

DISTRICT OF COLUMBIA, ss:

## DECLARATION OF TOM HEINEMANN

I, Tom Heinemann, declare and say as follows:

1. I am an Assistant Legal Adviser in the Office of the Legal Adviser for the U.S.
Department of State in Washington, D.C. This office has responsibility for extradition requests
within the Department of State, and I am familiar with the extradition case of Andrew
Hawkins. I make the following statements based upon my personal knowledge and upon
information made available to me in the performance of my official duties.

2. The relevant and applicable treaty provisions in full force and effect between the
United States and the United Kingdom relevant to this case are found in the Extradition Treaty
Between the Government of the United States of America and the Government of the United
Kingdom of Great Britain and Northern Ireland, and related Exchanges of Letters, signed 31
March 2003 ("the Treaty"), and the Instrument as contemplated by Article 3(2) of the
Agreement on Extradition between the Government of the United States of America and the
European Union signed 25 June 2003, as to the application of the Extradition Treaty Between
the Government of the United States of America and the Government of the United Kingdom
of Great Britain and Northern Ireland signed 31 March 2003 (the "Instrument"), signed at
London 16 December 2004. The Annex to the Instrument (the "Annex") reflects the integrated
text of the operative provisions of the Treaty and the Agreement on Extradition between the
United States of America and the European Union signed 25 June 2003. A copy of the
Instrument with Annex is attached to this declaration.

3. In accordance with the provisions of the Annex, the British Embassy has submitted
Embassy Note No. 011/2019, dated 4 February 2019, as supplemented by Embassy Note No.

072/2019, dated 23 July 2019, formally requesting the extradition of Andrew Hawkins. Copies of these diplomatic notes are attached to this declaration.

4. In accordance with Article 20 of the Annex, the Government of the United States appears in court in the United States on behalf of, and represents the interests of, the United Kingdom in any proceeding that arises out of a U.K. request for extradition. The United Kingdom provides the same legal representation in its courts on behalf of the United States with regard to extradition requests made by the United States.

5. The offense for which extradition is sought is covered by Article 2 of the Annex.

6. Under Article 9 of the Annex, documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the Requesting State are admissible in extradition proceedings without further certification, authentication, or other legalization. Therefore, such documents satisfy the authentication requirements without the need for certification by the U.S. Embassy in London. The United Kingdom, in submitting documents in the instant case that bear the certificate or seal of the Home Office, has complied with the Annex with respect to authentication.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on 5 May 2020.

_____
TOM HEINEMANN

Attachments:

1. Copy of Notes.
2. Copy of Instrument with Annex.



**British Embassy**
**Washington**

Embassy Note No:- 011/2019

## REQUEST FOR THE EXTRADITION OF ANDREW HAWKINS FROM THE UNITED STATES OF AMERICA TO THE UNITED KINGDOM

Her Britannic Majesty's Embassy presents its compliments to the Department of State and encloses documents in support of the extradition from the United States of America of ANDREW HAWKINS.

His extradition is sought under the UK-US Extradition Treaty 2003, as amended, as a person accused of the following offences:

- Fraud by false representation contrary to section 2 of the Fraud Act of 2006

The Embassy would be grateful if the enclosed papers could be transmitted as soon as possible to the appropriate authorities with a request for the extradition of ANDREW HAWKINS to the United Kingdom.

In the event of his return being ordered the Embassy would appreciate being notified as soon as possible so that arrangements can be made for his prompt return to the United Kingdom.

We believe him to be residing at 154 West 70th Street, Unit 11F, New York, New York, 10023.

Her Majesty's Embassy avails itself of this opportunity to express to the Department of State the renewed assurance of its highest consideration.



**British Embassy, Washington DC**

**04 February 2019**



## British Embassy
## Washington

Embassy Note No:- 071/2019

**SUPPLEMENTAL INFORMATION TO THE EXTRADITION REQUEST OF ANDREW HAWKINS FROM THE UNITED STATES OF AMERICA TO THE UNITED KINGDOM.**

Her Britannic Majesty's Embassy presents its compliments to the Department of State and provides the following supplemental information to the United Kingdom's extradition request for ANDREW HAWKINS in reference to the diplomatic note 016/2019 dated 04 February 2019.

The packet provides clarification to the accused offenses of Andrew Hawkins.

Her Majesty's Embassy avails itself of this opportunity to express to the Department of State the renewed assurance of its highest consideration.



23 July 2019

Instrument as contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003, as to the application of the Extradition Treaty between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland signed 31 March 2003

1.      As contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003 (hereafter "the Extradition Agreement"), the Governments of the United States of America and the United Kingdom of Great Britain and Northern Ireland acknowledge that, in accordance with the provisions of this Instrument, the Extradition Agreement is applied in relation to the bilateral Extradition Treaty between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland signed 31 March 2003 (hereafter "the 2003 Extradition Treaty") under the following terms:

a)      Article 5(1) of the Extradition Agreement shall be applied as set forth in Article 8(1) and 12(4) of the Annex to this Instrument to provide for the mode of transmission of the extradition request and supporting documents;

b)      Article 5(2) of the Extradition Agreement shall be applied as set forth in Article 9 of the Annex to this Instrument to provide for the requirements concerning certification, authentication or legalization of the extradition request and supporting documents;

c)      Article 7(1) of the Extradition Agreement shall be applied as set forth in Article 12(4) of the Annex to this Instrument to provide for an alternative method for transmission of the request for extradition and supporting documents following provisional arrest;

d)      Article 8(2) of the Extradition Agreement shall  be applied as set forth in Article 10(2) of the Annex to this Instrument to provide for the channel to be used for submitting supplementary information;

e)      Article 10 of the Extradition Agreement shall be applied as set forth in Article 15 of the Annex to this Instrument to provide for the decision on requests made by several States for the extradition or surrender of the same person; and

f)      Article 14 of the Extradition Agreement shall be applied as set forth in Article 8 bis of the Annex to this Instrument to provide for consultations where the Requesting State contemplates the submission of particularly sensitive information in support of a request for extradition.

2. .    The Annex reflects the integrated text of the operative provisions of the 2003 Extradition Treaty and the Extradition Agreement that shall apply upon entry into force of this Instrument.

3.a)    This Instrument shall apply to the United States of America and to Great Britain and Northern Ireland.  Subject to subparagraph b), the application of the 2003 Extradition Treaty to the Channel Islands, the Isle of Man, and any other territory of the United Kingdom to which

1

the 2003 Extradition Treaty may apply in accordance with its terms, shall remain unaffected by the Extradition Agreement and this Instrument.

b)      This Instrument shall not apply to any territory for whose international relations the United Kingdom is responsible unless the United States of America and the European Union, by exchange of diplomatic notes duly confirmed by the United Kingdom in accordance with Article 20(1) (b) of the Extradition Agreement, agree to extend its application thereto. The exchange of notes shall specify the authority in the territory responsible for the measure set forth in Article 9 of the Annex and the channels between the United States of America and the territory for transmissions pertaining to the extradition process, in lieu of those designated in the Annex. Such application may be terminated by either the United States of America or the European Union by giving six months' written notice to the other through the diplomatic channel, where duly confirmed between the United States of America and the United Kingdom in accordance with Article 20(2) of the Extradition Agreement.

4.      In accordance with Article 16 of the Extradition Agreement, this Instrument shall apply to offenses committed before as well as after it enters into force.

5.      This Instrument shall not apply to requests for extradition made prior to its entry into force.

6.      (a) This Instrument shall be subject to the completion by the United States of America and the United Kingdom of Great Britain and Northern Ireland of their respective applicable internal procedures for entry into force. The Governments of the United States of America and the United Kingdom of Great Britain and Northern Ireland shall thereupon exchange instruments indicating that such measures have been completed. This Instrument shall enter into force on the date of entry into force of the Extradition Agreement.

(b)      In the event of termination of the Extradition Agreement, this Instrument shall be terminated and the 2003 Extradition Treaty shall be applied. The Governments of the United States of America and the United Kingdom of Great Britain and Northern Ireland nevertheless may agree to continue to apply some or all of the provisions of this Instrument.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Instrument.

DONE at London, in duplicate, this 16 day of December 2004.

FOR THE GOVERNMENT OF
UNITED STATES OF AMERICA:

FOR THE GOVERNMENT OF
THE UNITED KINGDOM OF GREAT
BRITAIN AND NORTHERN IRELAND:

2

ANNEX

EXTRADITION TREATY
BETWEEN
THE GOVERNMENT OF THE UNITED STATES OF AMERICA
AND
THE GOVERNMENT OF THE UNITED KINGDOM OF GREAT BRITAIN AND
NORTHERN IRELAND

## TABLE OF CONTENTS

| | |
|---|---|
| Article 1 | Obligation to Extradite |
| Article 2 | Extraditable Offenses |
| Article 3 | Nationality |
| Article 4 | Political and Military Offenses |
| Article 5 | Prior Prosecution |
| Article 6 | Statute of Limitations |
| Article 7 | Capital Punishment |
| Article 8 | Extradition Procedures and Required Documents |
| Article 8 *bis* | Sensitive Information in a Request |
| Article 9 | Authentication of Documents |
| Article 10 | Additional Information |
| Article 11 | Translation |
| Article 12 | Provisional Arrest |
| Article 13 | Decision and Surrender |
| Article 14 | Temporary and Deferred Surrender |
| Article 15 | Requests for Extradition or Surrender Made by Several States |
| Article 16 | Seizure and Surrender of Property |
| Article 17 | Waiver of Extradition |
| Article 18 | Rule of Specialty |
| Article 19 | Transit |
| Article 20 | Representation and Expenses |
| Article 21 | Consultation |
| Article 22 | Termination |

3

## Article 1
## Obligation to Extradite

The Parties agree to extradite to each other, pursuant to the provisions of this Treaty, persons sought by the authorities in the Requesting State for trial or punishment for extraditable offenses.

## Article 2
## Extraditable Offenses

1.     An offense shall be an extraditable offense if the conduct on which the offense is based is punishable under the laws in both States by deprivation of liberty for a period of one year or more or by a more severe penalty.

2.     An offense shall also be an extraditable offense if it consists of an attempt or a conspiracy to commit, participation in the commission of, aiding or abetting, counseling or procuring the commission of, or being an accessory before or after the fact to any offense described in paragraph 1 of this Article.

3.     For the purposes of this Article, an offense shall be an extraditable offense:

    (a)     whether or not the laws in the Requesting and Requested States place the offense within the same category of offenses or describe the offense by the same terminology; or

    (b)     whether or not the offense is one for which United States federal law requires the showing of such matters as interstate transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being jurisdictional only.

4.     If the offense has been committed outside the territory of the Requesting State, extradition shall be granted in accordance with the provisions of the Treaty if the laws in the Requested State provide for the punishment of such conduct committed outside its territory in similar circumstances. If the laws in the Requested State do not provide for the punishment of such conduct committed outside of its territory in similar circumstances, the executive authority of the Requested State, in its discretion, may grant extradition provided that all other requirements of this Treaty are met.

5.     If extradition has been granted for an extraditable offense, it may also be granted for any other offense specified in the request if the latter offense is punishable by less than one year's deprivation of liberty, provided that all other requirements for extradition are met.

4

## Article 3
### Nationality

Extradition shall not be refused based on the nationality of the person sought.

## Article 4
### Political and Military Offenses

1.     Extradition shall not be granted if the offense for which extradition is requested is a political offense.

2.     For the purposes of this Treaty, the following offenses shall not be considered political offenses:

    (a)    an offense for which both Parties have the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to their competent authorities for decision as to prosecution;

    (b)    a murder or other violent crime against the person of a Head of State of one of the Parties, or of a member of the Head of State's family;

    (c)    murder, manslaughter, malicious wounding, or inflicting grievous bodily harm;

    (d)    an offense involving kidnapping, abduction, or any form of unlawful detention, including the taking of a hostage;

    (e)    placing or using, or threatening the placement or use of, an explosive, incendiary, or destructive device or firearm capable of endangering life, of causing grievous bodily harm, or of causing substantial property damage;

    (f)    possession of an explosive, incendiary, or destructive device capable of endangering life, of causing grievous bodily harm, or of causing substantial property damage;

    (g)    an attempt or a conspiracy to commit, participation in the commission of, aiding or abetting, counseling or procuring the commission of, or being an accessory before or after the fact to any of the foregoing offenses.

3.     Notwithstanding the terms of paragraph 2 of this Article, extradition shall not be granted if the competent authority of the Requested State determines that the request was politically motivated. In the United States, the executive branch is the competent authority for the purposes of this Article.

5

4.    The competent authority of the Requested State may refuse extradition for offenses under military law that are not offenses under ordinary criminal law.  In the United States, the executive branch is the competent authority for the purposes of this Article.

## Article 5
## Prior Prosecution

1.    Extradition shall not be granted when the person sought has been convicted or acquitted in the Requested State for the offense for which extradition is requested.

2.    The Requested State may refuse extradition when the person sought has been convicted or acquitted in a third state in respect of the conduct for which extradition is requested.

3.    Extradition shall not be precluded by the fact that the competent authorities of the Requested State:

    (a)    have decided not to prosecute the person sought for the acts for which extradition is requested;

    (b)    have decided to discontinue any criminal proceedings which have been instituted against the person sought for those acts; or

    (c)    are still investigating the person sought for the same acts for which extradition is sought.

## Article 6
## Statute of Limitations

The decision by the Requested State whether to grant the request for extradition shall be made without regard to any statute of limitations in either State.

## Article 7

## Capital Punishment

When the offense for which extradition is sought is punishable by death under the laws in the Requesting State and is not punishable by death under the laws in the Requested State, the executive authority in the Requested State may refuse extradition unless the Requesting State provides an assurance that the death penalty will not be imposed, or, if imposed, will not be carried out.

6

EXT-HAWKINS-00011

## Article 8
### Extradition Procedures and Required Documents

1.  All requests for extradition shall be submitted through the diplomatic channel.

2.  All requests for extradition shall be supported by:

    (a) as accurate a description as possible of the person sought, together with any other information that would help to establish identity and probable location;

    (b) a statement of the facts of the offense(s);

    (c) the relevant text of the law(s) describing the essential elements of the offense for which extradition is requested;

    (d) the relevant text of the law(s) prescribing punishment for the offense for which extradition is requested; and

    (e) documents, statements, or other types of information specified in paragraphs 3 or 4 of this Article, as applicable.

3.  In addition to the requirements in paragraph 2 of this Article, a request for extradition of a person who is sought for prosecution shall be supported by:

    (a) a copy of the warrant or order of arrest issued by a judge or other competent authority;

    (b) a copy of the charging document, if any; and

    (c) for requests to the United States, such information as would provide a reasonable basis to believe that the person sought committed the offense for which extradition is requested.

4.  In addition to the requirements in paragraph 2 of this Article, a request for extradition relating to a person who has been convicted of the offense for which extradition is sought shall be supported by:

    (a) information that the person sought is the person to whom the finding of guilt refers;

    (b) a copy of the judgment or memorandum of conviction or, if a copy is not available, a statement by a judicial authority that the person has been convicted;

    (c) a copy of the sentence imposed, if the person sought has been sentenced, and a statement establishing to what extent the sentence has been carried out; and

7

(d)    in the case of a person who has been convicted *in absentia*, information regarding the circumstances under which the person was voluntarily absent from the proceedings.

## Article 8 bis
### Sensitive Information in a Request

Where the Requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the Requested State to determine the extent to which the information can be protected by the Requested State. If the Requested State cannot protect the information in the manner sought by the Requesting State, the Requesting State shall determine whether the information shall nonetheless be submitted.

## Article 9
### Authentication of Documents

Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the Requesting State shall be admissible in extradition proceedings in the Requested State without further certification, authentication, or other legalization. "Ministry of Justice" shall mean, for the United States, the United States Department of Justice; and, for the United Kingdom, the Home Office.

## Article 10
### Additional Information

1.    If the Requested State requires additional information to enable a decision to be taken on the request for extradition, the Requesting State shall respond to the request within such time as the Requested State requires.

2.    Such additional information may be requested and furnished directly between the United States Department of Justice and the Home Office.

## Article 11
### Translation

All documents submitted under this Treaty by the Requesting State shall be in English or accompanied by a translation into English.

## Article 12
### Provisional Arrest

1.    In an urgent situation, the Requesting State may request the provisional arrest of the person sought pending presentation of the request for extradition. A

8

request for provisional arrest may be transmitted through the diplomatic channel or directly between the United States Department of Justice and such competent authority as the United Kingdom may designate for the purposes of this Article.

2.     The application for provisional arrest shall contain:

(a)     a description of the person sought;

(b)     the location of the person sought, if known;

(c)     a brief statement of the facts of the case including, if possible, the date and location of the offense(s);

(d)     a description of the law(s) violated;

(e)     a statement of the existence of a warrant or order of arrest or a finding of guilt or judgment of conviction against the person sought; and

(f)     a statement that the supporting documents for the person sought will follow within the time specified in this Treaty.

3.     The Requesting State shall be notified without delay of the disposition of its request for provisional arrest and the reasons for any inability to proceed with the request.

4.     A person who is provisionally arrested may be discharged from custody upon the expiration of sixty (60) days from the date of provisional arrest pursuant to this Treaty if the executive authority of the Requested State has not received the formal request for extradition and the documents supporting the extradition request as required in Article 8. For this purpose, receipt of the formal request for extradition and supporting documents by the Embassy of the Requested State in the Requesting State shall constitute receipt by the executive authority of the Requested State.

5.     The fact that the person sought has been discharged from custody pursuant to paragraph 4 of this Article shall not prejudice the subsequent re-arrest and extradition of that person if the extradition request and supporting documents are delivered at a later date.

Article 13
Decision and Surrender

1.     The Requested State shall promptly notify the Requesting State of its decision on the request for extradition. Such notification should be transmitted directly to the competent authority designated by the Requesting State to receive such notification and through the diplomatic channel.

9

EXT-HAWKINS-00014

2. If the request is denied in whole or in part, the Requested State shall provide reasons for the denial. The Requested State shall provide copies of pertinent judicial decisions upon request.

3. If the request for extradition is granted, the authorities of the Requesting and Requested States shall agree on the time and place for the surrender of the person sought.

4. If the person sought is not removed from the territory of the Requested State within the time period prescribed by the law of that State, that person may be discharged from custody, and the Requested State, in its discretion, may subsequently refuse extradition for the same offense(s).

Article 14
Temporary and Deferred Surrender

1. If the extradition request is granted for a person who is being proceeded against or is serving a sentence in the Requested State, the Requested State may temporarily surrender the person sought to the Requesting State for the purpose of prosecution. If the Requested State requests, the Requesting State shall keep the person so surrendered in custody and shall return that person to the Requested State after the conclusion of the proceedings against that person, in accordance with conditions to be determined by mutual agreement of the States.

2. The Requested State may postpone the extradition proceedings against a person who is being prosecuted or who is serving a sentence in that State. The postponement may continue until the prosecution of the person sought has been concluded or until such person has served any sentence imposed.

Article 15
Requests for Extradition or Surrender Made by Several States

1. If the Requested State receives requests from the Requesting State and from any other State or States for the extradition of the same person, either for the same offense or for different offenses, the executive authority of the Requested State shall determine to which State, if any, it will surrender the person.

2. If the United Kingdom receives an extradition request from the United States and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offense or for different offenses, its executive authority shall determine to which State, if any, it will surrender the person.

3. In making its decision under paragraphs 1 and 2 of this Article, the Requested State shall consider all of the relevant factors, including, but not limited to, the following:

10

EXI HAWKINS 00016

(a)  whether the requests were made pursuant to a treaty;
(b)  the places where each of the offenses was committed;
(c)  the respective interests of the requesting States;
(d)  the seriousness of the offenses;
(e)  the nationality of the victim;
(f)  the possibility of any subsequent extradition between the requesting States; and
(g)  the chronological order in which the requests were received from the requesting States.

## Article 16
### Seizure and Surrender of Property

1.  To the extent permitted under its law, the Requested State may seize and surrender to the Requesting State all items in whatever form, and assets, including proceeds, that are connected with the offense in respect of which extradition is granted. The items and assets mentioned in this Article may be surrendered even when the extradition cannot be effected due to the death, disappearance, or escape of the person sought.

2.  The Requested State may condition the surrender of the items upon satisfactory assurances from the Requesting State that the property will be returned to the Requested State as soon as practicable. The Requested State may also defer the surrender of such items if they are needed as evidence in the Requested State.

## Article 17
### Waiver of Extradition

If the person sought waives extradition and agrees to be surrendered to the Requesting State, the Requested State may surrender the person as expeditiously as possible without further proceedings.

## Article 18
### Rule of Specialty

1.  A person extradited under this Treaty may not be detained, tried, or punished in the Requesting State except for:

(a)  any offense for which extradition was granted, or a differently denominated offense based on the same facts as the offense on which extradition was granted, provided such offense is extraditable, or is a lesser included offense;

(b)  any offense committed after the extradition of the person; or

(c)  any offense for which the executive authority of the Requested State waives the rule of specialty and thereby consents to the

11

EXT-HAWKINS-00016

person's detention, trial, or punishment. For the purpose of this subparagraph:

(i)    the executive authority of the Requested State may require the submission of the documentation called for in Article 8; and

(ii)    the person extradited may be detained by the Requesting State for 90 days, or for such longer period of time as the Requested State may authorize, while the request for consent is being processed.

2.    A person extradited under this Treaty may not be the subject of onward extradition or surrender for any offense committed prior to extradition to the Requesting State unless the Requested State consents.

3.    Paragraphs 1 and 2 of this Article shall not prevent the detention, trial, or punishment of an extradited person, or the extradition of the person to a third State, if the person:

(a)    leaves the territory of the Requesting State after extradition and voluntarily returns to it; or

(b)    does not leave the territory of the Requesting State within 20 days of the day on which that person is free to leave.

4.    If the person sought waives extradition pursuant to Article 17, the specialty provisions in this Article shall not apply.

Article 19
Transit

1.    Either State may authorize transportation through its territory of a person surrendered to the other State by a third State or from the other State to a third State. A request for transit shall contain a description of the person being transported and a brief statement of the facts of the case. A person in transit shall be detained in custody during the period of transit.

2.    Authorization is not required when air transportation is used by one State and no landing is scheduled on the territory of the other State. If an unscheduled landing does occur, the State in which the unscheduled landing occurs may require a request for transit pursuant to paragraph 1 of this Article, and it may detain the person until the request for transit is received and the transit is effected, as long as the request is received within 96 hours of the unscheduled landing.

12

EXT-HAWKINS-00017

### Article 20
### Representation and Expenses

1.    The Requested State shall advise, assist, and appear on behalf of, the Requesting State in any proceedings in the courts of the Requested State arising out of a request for extradition or make all necessary arrangements for the same.

2.    The Requesting State shall pay all the expenses related to the translation of extradition documents and the transportation of the person surrendered. The Requested State shall pay all other expenses incurred in that State in connection with the extradition proceedings.

3.    Neither State shall make any pecuniary claim against the other State arising out of the arrest, detention, examination, or surrender of persons under this Treaty.

### Article 21
### Consultation

The Parties may consult with each other in connection with the processing of individual cases and in furtherance of efficient implementation of this Treaty.

### Article 22
### Termination

Either State may terminate this Treaty at any time by giving written notice to the other State through the diplomatic channel, and the termination shall be effective six months after the date of receipt of such notice.

EXT-HAWKINS-00018

**EMBASSY OF THE**
**UNITED STATES OF AMERICA**

No. 120

The Embassy of the United States of America at London, England, presents its compliments to Her Majesty's Principal Secretary of State for Foreign and Commonwealth Affairs and has the honor to refer to the Instrument as contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed June 25, 2003, as to the application of the Extradition Treaty between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland signed March 31, 2003 (the "2003 Extradition Treaty").

Having been informed by the Government of the United Kingdom of Great Britain and Northern Ireland that it will be unable to apply Article 5(2) of the Agreement on Extradition between the United States of America and the European Union, as set forth in Article 9 of the Annex to the Instrument, relating to authentication of extradition documents, until a corresponding change is made in its domestic law governing extradition, the Embassy has the honor to propose on behalf of the United States Government as follows:

Article 5(2) of the Agreement on Extradition between the United States of America and the European Union, as set forth in Article 9 of the Annex to the Instrument, shall not be applied until the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland indicate in a subsequent exchange of notes that the required internal procedures have been completed. Until that time, the parties agree to apply the procedure for authentication of extradition documents set forth in Article 9 of the Extradition Treaty between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland signed March 31, 2003, upon its entry into force. The Government of the United Kingdom of Great Britain and Northern Ireland shall undertake to seek the necessary legislation at the earliest possible time.

The Embassy also wishes to confirm that two exchanges of letters related to the 2003 Extradition Treaty and done simultaneous with its signature shall remain the understandings of the Governments with respect to this Instrument, until such time as they may agree otherwise.

If the foregoing is acceptable to your Government, the Embassy has the honor to propose that this Note and your Note in reply shall constitute an agreement between our two Governments, which shall enter into force on the date of entry into force of the Instrument.

The Embassy avails itself of the opportunity to express to Her Majesty's Principal Secretary of State for Foreign and Commonwealth Affairs the renewed assurance of its highest consideration.

Embassy of the United States of America
London, England.  December 16, 2004



The Consular Directorate of the Foreign and Commonwealth Office presents its compliments to the Embassy of the United States of America and has the honour to refer to the Embassy's Note No. 120 of 16 December 2004 which reads as follows:

"The Embassy of the United States of America at London, England, presents its compliments to Her Majesty's Principal Secretary of State for Foreign and Commonwealth Affairs and has the honour to refer to the Instrument as contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed June 25, 2003, as to the application of the Extradition Treaty between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland signed March 31, 2003 (the "2003 Extradition Treaty").

Having been informed by the Government of the United Kingdom of Great Britain and Northern Ireland that it will be unable to apply Article 5(2) of the Agreement on Extradition between the United States of America and the European Union, as set forth in Article 9 of the Annex to the Instrument, relating to authentication of extradition documents, until a corresponding change is made in its domestic law governing extradition, the Embassy has the honour to propose on behalf of the United States Government as follows:

Article 5(2) of the Agreement on Extradition between the United States of America and the European Union, as set forth in Article 9 of the Annex to the Instrument, shall not be applied until the United States of America and the Government of Great Britain and Northern Ireland indicate in a subsequent exchange of notes that the required internal procedures have been completed. Until that time, the parties agree to apply the procedure for authentication of extradition documents set forth in Article 9 of the Extradition Treaty between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland signed March 31, 2003, upon its entry into force. The Government of the United Kingdom of Great Britain and Northern Ireland shall undertake to seek the necessary legislation at the earliest possible time.

The Embassy also wishes to confirm that two exchanges of letters related to the 2003 Extradition Treaty and done simultaneous with its signature shall remain the understandings of the Governments with respect to this Instrument, until such time as they may agree otherwise.

If the foregoing is acceptable to your Government, the Embassy has the honour to propose that this Note and your Note in reply shall constitute an agreement between our two Governments, which shall enter into force on the date of entry into force of the Instrument.

The Embassy avails itself of this opportunity to express to Her Majesty's Principal Secretary of State for Foreign and Commonwealth Affairs the renewed assurance of its highest consideration."

In reply, the Foreign and Commonwealth Office has the honour to confirm that the proposal set out in the Embassy's Note is acceptable to the Government of the United Kingdom of Great Britain and Northern Ireland and that the Embassy's Note, and this Reply, shall constitute an agreement between the two Governments which shall enter into force on the date of entry into force of the Instrument.

The Consular Directorate of the Foreign and Commonwealth Office avails itself of this opportunity to renew to the Embassy of the United States the assurances of its highest consideration.

London
16 December 2004

**.R.**

forwarding the annexed papers, to be used in support of an application for the
surrender from the United States of America of Andrew Hawkins who is accused of
fraud by false representation contrary to section 2 of the Fraud Act 2006.

certify that to the best of my knowledge and belief, the signature of Susan Bouch
the depositions, is the signature of Susan Bouch, a District Judge at Westminster
Magistrates' Court having authority to issue and receive the same and I further
certify that such documents so signed by an officer having jurisdiction in the place
where the same were issued and taken, and authenticated by a Minister of State and
sealed with his official seal, would be received in evidence for similar purposes by
the tribunals in Great Britain.

*Julian Gibbs*

**Julian Gibbs**
Head of the Extradition Section
Home Office
16 January 2019

# The Extradition of
# ANDREW HAWKINS

# From the

# United States of
# America

*Kieran Michael Fowler* makes oath and states as follows

I am a Detective Constable within the Metropolitan Police Service. I am currently stationed in the Organised Crime Command based at Cobalt Square, Vauxhall, London, United Kingdom I am the officer in charge of the case against the Requested Person Andrew Hawkins.

I am able to provide the information in this deposition from my knowledge of the case. I provide this deposition in support of the request being made by the United Kingdom to secure his extradition to stand trial for the matters detailed below.

## A) Location & Identity of the Requested Person

Name:                Andrew Hawkins

Date of birth:        12 October 1975

Place of birth:       Cambridge, England

Nationality:          British

Height:               5' 8" (173cm)

Description:          Hawkins is a white male with proportionate build. Blue eyes with short, blond curly hair. He has an English accent.

I produce as my exhibit KMF/1 a photograph of Andrew Hawkins taken on 11 July 2017 when he was in custody with the Metropolitan Police Service under their reference LX121855.

I produce as my exhibit KMF/2 a copy of his fingerprints held on the Police National data base

The victim in the case Fiona Anderson was shown the same custody image on 20 September 2019 and she confirmed the male in the image was Andrew Hawkins. She stated that she had met Andrew Hawkins a number of times through having mutual friends prior to the offence and so was able to confirm his appearance. A statement has been obtained from Fiona Anderson confirming this.

Hawkins has been identified as marrying in the United States and is believed to be living in New York State in the Hamptons Bay area with his new wife Meredith Hull.

He has a United Kingdom Passport number 504377547.

The UK Telephone number associated with him is 07570892998 and the email address associated to him is andyjfhawkins@hotmail.com.

## B) Charges

Andrew Hawkins is to be charged with the following offence by Ali Rita, a Crown Prosecutor in the employment of the Crown Prosecution Service, which is the largest prosecuting authority in the jurisdiction of England and Wales. She has certified that there is a realistic prospect of conviction based on admissible evidence and that it is the public interest to prosecute the requested person in connection with his alleged conduct. As a consequence of the decision to charge the Requested Person; a warrant of first instance was obtained from Westminster Magistrates Court on the 5 October 2018 and signed by Magistrate Marina Lobanov-Rostovsky. I produce this as my exhibit KMF/3. As a consequence of the decision to charge and the obtaining of the warrant of arrest there is no other charging document in UK law.

The laying of information marks the end of the investigation stage and the bringing of the Requested Person before the court to be prosecuted.

The Requested Person is accused of the following offence.

**Fraud by False Representation**.

1. Between 28 January 2010 and 7 November 2012, within the jurisdiction of the Central Criminal Court, committed fraud in that he dishonestly made a false representation, namely that he was investing £102,400 into various investment schemes, intending to make a gain, namely , for himself £102,400. *Contrary to section 2 of the Fraud Act 2006.*

## Conduct alleged

It is alleged that £102,400 was transferred by the Victim Fiona Anderson to an account controlled by the suspect Andrew Hawkins under the false premise that it was to be invested in various schemes. These funds have not been invested as proposed and have been diverted and used by Hawkins for his own purpose.

## Précis of Key Evidence

Fiona Anderson Is the complainant and victim in this fraud matter. She provides evidence via witness testimony detailing the agreement between herself and Hawkins for the investment opportunities. This has been captured on Email correspondence between the parties all of which is collated and exhibited. Anderson gave him £22,400 to be deposited in an investment scheme with Hawkins that according to Hawkins would grow in capital. Hawkins explained another opportunity existed for £80,000.00 with a company called Intelligent Land Investments Ltd. Hawkins took this money to be invested with them, it was established that this never happened with Hawkins making no attempt to invest that money as proposed. Email correspondence also includes information from Hawkins on profits of the investments and the difficulties Hawkins claims to be having when returning the money to Anderson which he claimed to have invested in Intelligent Land Investments. The victim confirms that £102,400 has been transferred from her accounts to Hawkins and provided bank statements and confirmation of fund transfers. Despite reports of success in the investments from Hawkins the victim was unable to retrieve any of her initial investment back.

## Intelligent Land Investments Ltd

A statement has been taken from Mark Thomas Wilson, the CEO of Intelligent Land Investments Ltd. In this statement he states that Intelligent Land Investments have had no dealings with Andrew Hawkins. Wilson has had dealings with Malcolm and George Hawkins

the brother and father of Andrew Hawkins but not with the suspect Andrew Hawkins whom he has never met.

**Financial Transactions**

Financial transactions from the victim's bank account Santander and a production order from the suspect's account at TSB Bank plc shows money being received from the victim and then transferred into gambling sites.

There are indications from William Hill that accounts opened by the suspect show deposits of £618,122.00, withdrawal of £136,275.00 and a loss of £481,846.00.

**Concluding remarks**

I confirm that the witnesses are available to give evidence for the prosecution. Likewise I am not aware of any developments within the time period since the First Appearance Warrant was laid on 5 October 2018 that would undermine the case against the Requested Person. Lastly I state that I am unaware of any other allegations involving the Requested Person being investigated or prosecuted within Metropolitan Police Service or within UK law enforcement generally.

Sworn at Westminster        )

Magistrates' Court on        )

the 9 day of January  2019  )

*Kiran Fowler p230912*

**Kieran Michael Fowler**

**Before me**

*S Bovch*

**District Judge (Magistrates' Court)**

4

# EXHIBIT

This is Exhibit KMF/1 Custody Photograph of Andrew Hawkins
referred to in the statement of Kieran Michael Fowler

Sworn at Westminster )

Magistrates' Court on this the 9 )

Day of January 2019 )

_Kieran Fowler p230912_

Kieran Michael Fowler

Before me:

_SBouch_

District Judge (Magistrates' Courts)



I certify that this is a true likeness of Andrew Hawkins

Kieran Michael Fowler

Kieran Fowler p230912

EXHIBIT

This is Exhibit KMF/2 Fingerprints of Andrew Hawkins
referred to in the statement of Kieran Michael Fowler

Sworn at Westminster )

Magistrates' Court on this the 9 )

Day of January   2019 )

_Kieran Fowler p230912_

Kieran Michael Fowler

Before me:

_SBorel_

District Judge (Magistrates' Courts)

Palm prints should also be taken. The form must be signed by the officer taking the fingerprints.

LANA0H0038075W

| ARREST/SUMMONS NUMBER | 1 2 0 1 L K 0 1 0 0 0 0 0 0 0 1 8 5 5 Z | |
|---|---|---|

| Family Name | HAWKINS | I identify this form as Exhibit Identity Number | VS.1 |
|---|---|---|---|
| Forename(s) | ANDREW | Taken by: Name Viren Soni | Rank/Number DDO |
| Alias/Maiden Name | | Force (Force code) 0 1 | Date D D M M Y Y Y Y 1 0 7 2 0 1 2 |

| Sex (M/F/U) M | Date of Birth D D M M Y Y Y Y 1 2 1 0 1 9 7 5 | Nationality United Kingdom | Signature |
|---|---|---|---|

| CHARGED | TICK ✓ | DATA PROTECTION - These fingerprints will form part of a computerised collection, as such they may be used by Police Forces for identification and crime investigation purposes. PRISONERS SIGNATURE :- |
|---|---|---|
| REPORTED | | |
| CAUTION | | |
| WARNING | | Offence (1) Fraud by false repre | Place of Offence (Station Code) (1) 0 1 L K |
| REPRIMAND | | Offence (2) | (2) |
| NOT CHARGED | | Appearing /Attending D D M M Y Y Y Y | Charging Station (Station Code) 0 1 L K |

HEALTH AND SAFETY - Forms contaminated with blood or other bodily fluids, or fingerprints suspected to be from sufferers or carriers of communicable disease must be sealed in accordance with Health and Safety requirements.
Nature of Disease :-

Custody no.
01LK/00000001855/12

EXHIBIT LABEL

| 1. RIGHT THUMB | 2. RIGHT FORE | 3. RIGHT MIDDLE | 4. RIGHT RING | 5. RIGHT LITTLE |
|---|---|---|---|---|

FOLD

| 6. LEFT THUMB | 7. LEFT FORE | 8. LEFT MIDDLE | 9. LEFT RING | 10. LEFT LITTLE |
|---|---|---|---|---|

FOLD

## PLAIN IMPRESSIONS

| LEFT HAND Four fingers taken simultaneously | TWO THUMBS Impressions taken simultaneously | | RIGHT HAND Four fingers taken simultaneously |
|---|---|---|---|
| Lexmark T630 # 20181019-12:46 | LEFT | RIGHT | 20181019-12:46 |

RESTRICTED
EXH/AHAWKINS-00031

6

RIGHT PALM





TRUE COPY OF THE FINGER/PALM FORM EXHIBIT(S) IN THE NAME OF

Andrew HAWKINS

NAME/SIGNATURE........................

For Director Directorate of Forensic Services

LEFT PALM





7

# EXHIBIT

This is Exhibit KMF/3 Warrant of First Instance for Andrew Hawkins
referred to in the statement of Kieran Michael Fowler

Sworn at Westminster )

Magistrates' Court on this the 9 )

Day of January   2019 )

*Kieran Fowler p23092*

Kieran Michael Fowler

Before me:

*SBouch*

District Judge (Magistrates' Courts)

# WESTMINSTER MAGISTRATES COURT (2570)

To each and all of the Constables of the Metropolitan Police

DATE: 5th October 2018

ACCUSED: Andrew James HAWKINS

DATE OF BIRTH: 12/10/1975

ADDRESS: Not Known

ALLEGED OFFENCES:
### 1) Fraud by False Representation
(Between 28th January 2010 and 7th November 2012, within the jurisdiction of the Central Criminal Court, committed fraud in that he dishonestly made a false representation, namely that he was investing £102,400 into various investment schemes, intending to make a gain, namely , for himself £102,400. Contrary to section 2 of the Fraud Act 2006.)

# WESTMINSTER MAGISTRATES COURT (2570)

Information in writing having this day been laid before me, the undersigned, by

Detective Constable Kieran Fowler

That the accused committed the offences of which the particulars are given above.

DIRECTION:
You, the said constables, are hereby required to arrest the accused and to bring the accused before the above Magistrates' Court immediately.

District Judge / Justice of the Peace (Magistrates' Court)
M.C.A.4 Warrant. First Instance.

**Annie Conway takes oath and states:-**

I am a Solicitor and Specialist Extradition Prosecutor with the Crown Prosecution Service of England and Wales. I am well acquainted with the criminal law of England and Wales. I am the lawyer responsible for the preparation of the extradition request for Andrew Hawkins. I am familiar with the facts of this case.

The United Kingdom requests the extradition of Andrew Hawkins in order to prosecute him for the following offence;

Fraud by False Representation

1Between 28th January 2010 and 7th November 2012, within the jurisdiction of the Central Criminal Court, committed fraud in that he dishonestly made a false representation, namely that he was investing £102,400 into various investment schemes, intending to make a gain, namely , for himself £102,400. Contrary to section 2 of the Fraud Act 2006.

A copy of the 'First Instance' warrant is supplied in the accompanying deposition from the Police Officer in charge of the case, Detective Constable Kieran Michael Fowler. I certify the offence is punishable by a maximum custodial sentence in excess of 1 year in duration.

This part of the statement covers the legal definition of the offences for which the Requested person is being prosecuted.

## FRAUD

Fraud contrary to sections 1, 2 and 4 of the Fraud Act 2006:

A person is guilty of fraud under Section 1(1) if he is in breach of any of the sections listed in subsection (2). These sections provide for different ways of committing the offence of fraud. This includes fraud by false representation (section 2 Fraud Act 2006) and fraud by abuse of position (section 4 Fraud Act 2006).

Section 2 is headed "Fraud by False Representation". A person is guilty of fraud under this section if he-
(a) dishonestly makes a false representation, and
(b) intends by making the representation
(i) to make a gain for himself or another, or
(ii) to cause loss to another or expose another to a risk of loss.

9

A representation is false if it is untrue or misleading and the person making it knows that it is, or might be untrue or misleading.

A representation may be express or implied.

A representation may be regarded as made if it (or anything implying it) is submitted in any form to any system or device designed to convey or respond to communications (with or without human intervention).

Section 4 is headed "Fraud by Abuse of Position". A person is in breach of this section if he-

(a)     occupies a position in which he is expected to safeguard, or not to act against, the financial interests of another person,

(b)     dishonestly abuses that position, and

(c)     intends, by means of the abuse of that position-

(i)     to make a gain for himself or another, or

(ii)    to cause loss to another or to expose another to a risk of loss

A person may be regarded as having abused his position even though his conduct consisted of an omission rather than an act.

References to "gain" and "loss" in sections 2 and 4 are to be read in accordance with section 5. In section 5 "gain" and "loss" extend only to gain and loss in money or other property and include any such gain or loss whether temporary or permanent. "Gain" includes a gain by keeping what one has as well as a gain by getting what one does not have.

"Loss" includes a loss by not getting what one might get, as well as a loss by parting with what one has.

Whether an accused has acted dishonestly' is a matter which is determined in two stages. First it must be decided whether according to the ordinary standards of reasonable and honest people that what was done would be regarded as dishonest. If it was dishonest by those standards then a second matter must be considered namely, whether the accused must have realised that what he was doing was dishonest by the standards of reasonable and honest people.

A person who is guilty of fraud is liable –

On conviction on indictment to imprisonment for a term not exceeding ten years imprisonment or to a fine or to both.

Charging Document

As a matter of law, on the facts of this case there is no requirement to have a separate charging document because Andrew Hawkins left the UK before he could be arrested. Had he remained in the UK and been arrested and interviewed the police would have served him with a copy of the charges authorised by a Crown Prosecutor. These charges would have been confirmed by the Court before which he made his first appearance. The warrant issued on 5 October 2018 is therefore sufficient under UK law to charge Andrew Hawkins with the offence detailed in that warrant prior to his surrender to the UK pursuant to the extradition request.

**This part of the statement deals with the relevant parts of the UK Extradition Act 2003 which would apply to a Requested Person being surrendered to face trial.**

### 151 Dealing with person for other offences: other category 2 territories

(1) This section applies if—

(a) a person is extradited to the United Kingdom from a category 2 territory under law of the territory corresponding to Part 2 of this Act, and

(b) the territory is not one falling within section 150(1)(b).

(2) The person may be dealt with in the United Kingdom for an offence committed before his extradition only if—

(a) the offence is one falling within subsection (3), or

(b) the condition in subsection (4) is satisfied.

(3) The offences are—

(a) the offence in respect of which the person is extradited;

(b) an offence disclosed by the information provided to the category 2 territory in respect of that offence;

(c) an offence in respect of which consent to the person being dealt with is given on behalf of the territory.

(4) The condition is that—

(a) the person has returned to the territory from which he was extradited, or

(b) the person has been given an opportunity to leave the United Kingdom.

(5) A person is dealt with in the United Kingdom for an offence if—

(a) he is tried there for it;

(b) he is detained with a view to trial there for it.

This is subject to section 151B.

(3) The offences are—

(a) the offence in respect of which the person is extradited;

(b) a lesser offence disclosed by the information provided to the category 2 territory in respect of that offence;

(c) an offence in respect of which consent to the person being dealt with is given by or on behalf of the relevant authority.

(4) An offence is a lesser offence in relation to another offence if the maximum punishment for it is less severe than the maximum punishment for the other offence.......

(6) The condition is that the protected period has ended.

(7) The protected period is 45 days starting with the first day after his extradition to the United Kingdom on which the person is given an opportunity to leave the United Kingdom.

(8) A person is dealt with in the United Kingdom for an offence if—

(a) he is tried there for it;

(b) he is detained with a view to trial there for it.

## 152 Remission of punishment for other offences

(1) This section applies if—

(a) a person is extradited to the United Kingdom [from a territory;] [1]

[...] [1]

(b) before his extradition he has been convicted of an offence in the United Kingdom;

(c) he has not been extradited in respect of that offence.

(2) The [sentence for the offence must be treated as served] [2] but the person's conviction for the offence must be treated as a conviction for all other purposes.

## 153 Return of person acquitted or not tried (1) This section applies if—

(a) a person is accused in the United Kingdom of the commission of an offence;

(b) the person is extradited to the United Kingdom in respect of the offence [from a territory;] [1]

(c) the condition in subsection (2) or the condition in subsection (3) is satisfied.

(2) The condition is that—

(a) proceedings against the person for the offence are not begun before the end of the required period, which is 6 months starting with the day on which the person arrives in the United Kingdom on his extradition, and

(b) before the end of the period of 3 months starting immediately after the end of the required period the person asks the Secretary of State to return him to the territory from which he was extradited.

(3) The condition is that—

(a) at his trial for the offence the person is acquitted or is discharged under any of the provisions specified in subsection (4), and

(b) before the end of the period of 3 months starting immediately after the date of his acquittal or discharge the person asks the Secretary of State to return him to the territory from which he was extradited.

(4) The provisions are—

(a) section 12(1) of the Powers of Criminal Courts (Sentencing) Act 2000 (c. 6);

(b) section 246(1), (2) or (3) of the Criminal Procedure (Scotland) Act 1995 (c. 46);

(c) Article 4(1) of the Criminal Justice (Northern Ireland) Order 1996 (S.I. 1996/3160 (N.I. 24)).

(5) The Secretary of State must arrange for him to be sent back, free of charge and with as little delay as possible, to the territory from which he was extradited to the United Kingdom in respect of the offence.

**Sworn at Westminster** )
**Magistrates' Court on this** )
**the 9 day** of **January 2019** )

_____
**Annie Conway**

**Before me:**

_____
**District Judge (Magistrates' Courts)**

13



# WESTMINSTER MAGISTRATES' COURT.

### This 9 day of January 2019

I, *SUSAN BOUCH* THE UNDERSIGNED, one of the District Judges (Magistrates' Courts) sitting at Westminster Magistrates' Court hereby certify that the written and photographic matters contained in the foregoing pages 1 - 13 are the depositions of Kieran Michael Fowler and Annie Conway and true copies of exhibits referred to in the said depositions for the apprehension of Andrew Hawkins as laid and sworn before me at Westminster Magistrates' Court on the 9 day of January 2019

GIVEN under my hand and seal, this 9 day of January 2019 at Westminster Magistrates' Court.

Signed ..*SUSAN BOUCH*................................

*P Bouch.*



District Judge (Magistrates' Courts)

EXT-HAWKINS-00040

14

# E.R.

In forwarding the annexed papers, to be used in support of an application for the surrender from the United States of America of Andrew Hawkins who is accused of fraud by false representation contrary to section 2 of the Fraud Act 2006

I certify that to the best of my knowledge and belief, the signature of Michael Fanning to the depositions, is the signature of Michael Fanning, a District Judge at Westminster Magistrates' Court having authority to issue and receive the same and I further certify that such documents so signed by an officer having jurisdiction in the place where the same were issued and taken, and authenticated by a Minister of State and sealed with his official seal, would be received in evidence for similar purposes by the tribunals in Great Britain.

**Julian Gibbs**
Head of the Extradition Section
Home Office

19th July 2019



**British Embassy**
**Washington**

Embassy Note No:- 071/2019

**SUPPLEMENTAL INFORMATION TO THE EXTRADITION REQUEST OF ANDREW HAWKINS**
**FROM THE UNITED STATES OF AMERICA TO THE UNITED KINGDOM.**

Her Britannic Majesty's Embassy presents its compliments to the Department of State and
provides the following supplemental information to the United Kingdom's extradition
request for ANDREW HAWKINS in reference to the diplomatic note 016/2019 dated 04
February 2019.

The packet provides clarification to the accused offenses of Andrew Hawkins.

Her Majesty's Embassy avails itself of this opportunity to express to the Department of State
the renewed assurance of its highest consideration.

23 July 2019

# The Extradition of

# Andrew Hawkins

# From

# The United States of America

## Supplementary Bundle

**Kieran Michael Fowler makes oath and states as follows**

I am a Detective Constable within the Metropolitan Police Service. I am currently stationed in the Organised Crime Command based at Cobalt Square, Vauxhall, London, United Kingdom I am the officer in charge of the case against the Requested Person Andrew Hawkins.

In response to an enquiry from the U.S. Department of Justice I make the following corrections to the statement I made on 9 January 2019

~~On~~ page 1 of my 9 January 2019 statement, I refer to Exhibit KMF/1, a photograph taken of the fugitive Andrew Hawkins ("Hawkins"). This photograph of Hawkins was taken on 11 July 2012 and not in the year 2017, which was a typographic error. The photograph of Hawkins was taken as part of an arrest on a separate fraud matter, unconnected to this request for extradition.

The fingerprints that have been sent with the request for extradition (referred to as Exhibit KMF/2 on page 1 of my 9 January 2019 statement) were also taken on 11 July 2012 and were taken from the U.K. National Fingerprint Data base.

On 20 September 2018, Fiona Anderson was shown a custody imaging photograph of Hawkins (Exhibit KMF/1). Ms. Anderson was shown the custody imaging photograph on 20 September 2018 and not in the year 2019, which was a typographic error.

On 20 September 2018 Fiona Anderson was shown a custody imaging photograph of Andrew Hawkins. This photograph was taken on 11 July 2012. This arrest relates to a separate fraud matter, unconnected to this request.

Sworn at Westminster )

Magistrates' Court on )

the 17 day of July 2019 )

DC Kieran Fowler p230912

**Kieran Michael Fowler**

Before me

District Judge (Magistrates' Court)   FANNING



# WESTMINSTER MAGISTRATES' COURT.

### This 17 day of July 2019

I, MICHAEL FANNING THE UNDERSIGNED, one of the District Judges (Magistrates' Courts) sitting at Westminster Magistrates' Court hereby certify that the written matter contained in the foregoing page is the deposition of Kieran Michael Fowler for the apprehension of Andrew Hawkins as laid and sworn before me at Westminster Magistrates' Court on the 17 day of July 2019

GIVEN under my hand and seal, this 17 day of July 2019 at Westminster Magistrates' Court.

Signed .................................................................................



District Judge (Magistrates' Courts)

EXT-HAWKINS-00045